422 So.2d 1243 (1982)
EMPLOYERS INSURANCE COMPANY OF WAUSAU
v.
Theodore M. DRYDEN.
No. 15116.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
C.T. Williams, Jr., New Orleans, for plaintiff, defendant and appellant.
Dennis S. Gaubert of St. Martin & St. Martin, Houma, for defendant and appellee.
Before EDWARDS, WATKINS and SHORTESS, JJ.
WATKINS, Judge.
This is an action for personal injury brought by Theodore M. Dryden, a captain with the Terrebonne Parish Sheriff's Office at the time of the accident sued upon, against Employers Insurance Company of Wausau, the uninsured and underinsured motorist insurer of the Terrebonne Parish Sheriff's Office, Ross Hinkie, the driver of a van that struck and seriously injured Dryden, State Farm Mutual Automobile Insurance Company, the automobile liability insurer of Roy Hinkie, Ross Hinkie's father, and Prudential Property and Casualty Insurance Company, alleged to be the uninsured and underinsured motorist insurer of an undesignated party. Employers of Wausau filed a third party demand against Ross Hinkie and State Farm. Consolidated with this action was a prior suit for a declaratory judgment construing the policy filed by Employers of Wausau against Dryden. The parties stipulated before trial that the maximum uninsured or underinsured motorist limits of the policy issued by Employers of Wausau to the Sheriff's Office was $100,000.00, and that should the trial court decide *1244 for Dryden, judgment was to be rendered in the sum of $100,000.00. It did not rule upon Dryden's demands against the other co-defendants or upon Employers of Wausau's third party demand. Employers of Wausau appealed the judgment in favor of Dryden against it. Thus, the sole issue before us on appeal is the correctness of the trial court's judgment in favor of Dryden and against Employers of Wausau. We affirm, finding the judgment of the trial court to be correct.
On July 28, 1979, two motor vehicle accidents occurred in early morning between 4:00 and 5:30 o'clock on the southbound lanes of Louisiana Highway No. 24 north of Savanne Road near Houma, Louisiana. Dryden was seriously injured in the second accident.
In the first accident, the facts surrounding which concern us only indirectly, a vehicle ran off the highway and wrapped itself around a post supporting a "Dailey Oil Tool" sign near Highway 24. One of the occupants of the vehicle was killed and one was seriously injured. Sheriff's cars and state police cars arrived on the scene very quickly. Captain Dryden of the Sheriff's Office, who was in charge of and who drove E-1, a Sheriff's Office emergency vehicle, drove across to Highway 24 by way of Savanne Road which intersected the two southbound lanes of Highway 24 south of the accident scene. Because of the emergency, Captain Dryden proceeded north, against traffic, on the southbound portion of Highway 24 to the scene of the accident. (At the point of the accident, Highway 24 has two northbound and two southbound lanes, being respectively on the east and west banks of a bayou.) Captain Dryden parked E-1 on the shoulder of the southbound lanes facing north. The front wheels of E-1 were on the shoulder several feet from the highway, and the rear wheels were also on the shoulder but much nearer to the highway. The rear bumper of E-1 protruded onto the highway several inches. Captain Dryden was injured so severely that he was stipulated to have no memory of the second accident. However, Sheriff's and State Police officials speculated that E-1 was left at a slant because of the emergency situation resulting from the first accident, and the presence of the other vehicles of the Sheriff's Office and State Police, which made it impossible to park in any other manner.
After parking E-1, Captain Dryden went over to the scene of the first accident and undertook the extrication of the dead man and the injured occupant of the vehicle wrapped around the Dailey sign post. This process took a considerable length of time. Finally, both occupants were extricated and placed in ambulances. Throughout this time, Lt. Rivet of the Sheriff's Office stood in the center of the highway, directing traffic into the right (west) lane. When the occupants were removed from the vehicle, Captain Dryden called Lt. Rivet away from directing traffic to obtain information about the two persons in the vehicle and also that vehicle's license number.
Shortly thereafter, Captain Dryden walked over to the left (driver's side) of E-1, and opened a small cargo door on the side of the emergency unit to the rear of the passenger compartment in order to stow equipment. He placed unknown items of equipment in the compartment within that door. About that time, a van driven by Ross Hinkie and owned by his father, Ray Hinkie, which was proceeding south on Highway 24 in the left lane, struck the door of the emergency vehicle and Captain Dryden, causing serious injuries to Captain Dryden.
At the time of the second accident, it was still dark. However, the highway was illuminated by street lights and also the Dailey sign, which was still lighted in spite of the fact that the vehicle was wrapped around the supporting post as a result of the first accident. There were several Sheriff's and State Police cars on both sides of the road and all had red and blue emergency lights flashing. Also, red and blue emergency lights were flashing on the emergency vehicle, and floodlights of considerable candlepower located on the emergency vehicle were illuminated at the scene of the first *1245 accident. The road was dry, and it was not raining. Hinkie testified that when he saw the emergency lights, he slowed down from the speed limit of 40 mph to a speed of 25-30 mph. He merely let up on the accelerator; he did not apply the brakes.
The only eyewitnesses who saw the second accident itself, rather than merely the events immediately before and immediately after, were Hinkie and a friend, who was the only occupant of the Hinkie van, Steven C. McGraw. Both had been out drinking all night and Hinkie had a PEI reading of 1.7 (sic). In a separate criminal proceeding, the transcript of which was introduced in the present proceeding by stipulation of counsel for the facts testified to, Hinkie was found guilty of driving while under the influence of alcohol.
Employers of Wausau contends (1) that Dryden was not an insured under the uninsured motorist policy issued by it to the Terrebonne Parish Sheriff's Office and, further, (2) that Hinkie was free from negligence and Dryden was guilty of contributory negligence.
The policy issued by Employers of Wausau contains the following provisions with respect to "PERSONS INSURED":
"Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
(b) any other person while occupying an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability."
We hold that Dryden was an insured under clause (a) and under clause (b) as well. Because the policy indicates "PERSONS INSURED" includes anyone meeting one of the three categories listed in that definition, it is necessary that Dryden fall under only one category. Dryden falls under two categories, however.
The policy gives "Terrebonne Parish Sheriff's Office" as Named Insured. The Named Insured is an Insured under clause (a). Obviously, "Terrebonne Parish Sheriff's Office" includes not only the Sheriff, but all Deputies as well, as, had the policy been intended to designate the Sheriff alone as Named Insured, the Named Insured would have been the Sheriff. By using the broader term, the policy makes the Sheriff and all Deputies the Named Insured. As Dryden was a Deputy, he is a Named Insured, and thus falls into category (a).
Also, when he was injured, Captain Dryden was "occupying" the emergency vehicle under clause (b) as that word is defined in the policy. The policy states "`occupying' means in or upon or entering into or alighting from". Captain Dryden was "upon" the vehicle we hold, as he was opening the side cargo door of E-1 when he was struck. Although the whole of the testimony is inconsistent and conflicting, the only two eyewitnesses to the accident, Hinkie and his passenger, McGraw, both testified Dryden was opening the side cargo door when he was struck. The trial court properly found that Dryden was struck while placing items back into the compartment of the emergency unit. Other testimony verifies that Dryden was putting away equipment with the side cargo door open.
Under the holding of the Louisiana Supreme Court in Smith v. Girley, 260 La. 223, 255 So.2d 748 (1971), if a person is physically in contact with the insured vehicle at the time of injury, he is considered to be "upon" the insured vehicle. In the present case Dryden was physically in contact with E-1 as he was stowing gear, placing objects inside the truck through the opened cargo door, when he was injured. Thus, the present case contains the element of putting goods or equipment inside the insured vehicle in addition to the element of physical *1246 contact with the insured vehicle, and is an even stronger factual situation for finding the injured party to have been "upon" the vehicle than Smith v. Girley, supra. Insurance policies are to be broadly construed in favor of coverage. Hendricks v. American Employers Insurance Co., 176 So.2d 827 (La.App. 2nd Cir.1965), writ refused, 248 La. 415, 179 So.2d 15 (1965). As Smith v. Girley properly notes, many other states do not even require that the injured party be touching the insured highway vehicle for the injured party to be "upon" that vehicle. However, it is apparent Dryden was "upon" the insured vehicle even under the somewhat narrower definition that was sufficient to arrive at in the holding in Smith v. Girley. The policy thus applies to Dryden. We must then determine whether or not the uninsured or underinsured motorist was legally responsible for Dryden's injuries. If Hinkie was free from legal fault, Employers of Wausau is not liable.
Appellant's brief states that the trial court, on original hearing, before granting a rehearing which did not alter the result, labored under the erroneous impression that there had been a stipulation of counsel that Hinkie was negligent. However, if we look at the pleadings we see Dryden alleged that Hinkie was negligent and Employers of Wausau admitted that allegation. Furthermore, looking to the testimony, we see negligence was clearly established. Police vehicles were parked on each side of the highway with their emergency lights flashing. Rather than applying the brakes or coming to a virtual standstill, Hinkie merely lifted his foot off the accelerator and slowed down from 40 mph to between 25 and 30 mph. Also, Hinkie should have moved his vehicle into the right lane of travel. Hinkie's excuse for not doing so is that there was a moving vehicle in the right lane. However, if Hinkie had reduced speed sufficiently, he could have entered the right lane of travel behind the other moving vehicle. Furthermore, Hinkie had been drinking all night, and obviously, his reflexes were slowed.
Employers of Wausau contends that Dryden was contributorily negligent in calling Rivet away from directing traffic, in parking E-1 partly on the highway, and in opening the door when Hinkie was approaching. However, an emergency situation existed. One person had just been killed and another seriously injured in the first accident. The ambulances had just been loaded. It is unduly technical to define a precise point at which the emergency ceased, or to expect the Sheriff's Office to make such a determination among its other numerous duties attendant upon a fatal motor vehicle accident. The emergency situation clearly persisted. The Sheriff's and State Police cars still had their flashing lights on. Dryden was justified in feeling he had an umbrella of protection in calling Lt. Rivet away from directing traffic, in parking E-1 at an angle and leaving it so parked, and in opening the cargo door on E-1.
LSA-R.S. 32:24 clearly takes the driver of an emergency vehicle outside the precise terms of the Highway Regulatory Act (Title 32, Chapter 1, Revised Statutes of Louisiana) and the full breadth of general rules governing use of a vehicle under non-emergency conditions:
"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;

*1247 (4) Disregard regulations governing the direction or movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle. Amended by Acts 1980, No. 160, Section 1.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others. Acts 1982, No. 310, Section 1."
Because of the emergency situation Dryden did not breach his duty to the users of the public roads by parking with the rear bumper of E-1 extending several inches over the highway. It was necessary for Dryden to assess the conditions of the first accident and to attempt to save one or two lives. He could not be expected to park with the precision expected of an ordinary motorist. Also, he could not have parked otherwise, as other vehicles were in the way. Furthermore, the weight of the testimony indicates Dryden was standing on the shoulder when he was struck. It is not at all certain that the fact that the rear bumper of E-1 was over the road contributed in any way to the accident, particularly when it is remembered Dryden was opening a side cargo door, which door when closed was not situated above the highway surface in the position in which E-1 was parked.
It was necessary for Dryden to call Rivet away from directing traffic to perform other duties. An emergency existed. Rivet was needed off the road to obtain information about the victims of the first accident and to get the license number. Because the flashing lights and all Sheriff's and State Police cars were still flashing red and blue, Dryden was justified in assuming that these lights, the bright street lights, the Dailey light and the flood lights on the emergency vehicles were sufficient to apprise an approaching motorist of the fact that a dangerous situation arising from a recent accident existed and that he should proceed with extreme caution.
For the same reasons, Dryden was free from contributory negligence in walking along the shoulder and opening the side cargo door on E-1. The flashing lights and other lights in the area were sufficient to warn approaching motorists that they should proceed with extreme caution. Because the accident was dramatically called to approaching motorists' attention, Dryden could reasonably feel he could safely carry out his duties in stowing away equipment. He was justified in relying upon the protection afforded by the fact that it should have been apparent even to a non-observant motorist that a serious accident had occurred. His duties as driver of an emergency vehicle required that he stow equipment and open cargo doors on the side of that vehicle. The accident was very serious, involving the death of one person. To require a driver of an emergency vehicle in an emergency situation to observe the standard of care expected of a driver of a private vehicle under non-extraordinary conditions would be to hamper the use of emergency equipment and to limit the breadth of protection afforded the public by those protecting the public life and property.
Lastly, Employers of Wausau contends Dryden violated LSA-R.S. 32:141 by parking partly on the roadway, and R.S. 32:283 by opening a door on the side next to moving traffic. These provisions, as we have earlier indicated, have little or no application to an emergency vehicle because of the provisions of LSA-R.S. 32:24. As we have indicated, in view of the emergency that existed, Dryden should not be expected to abide by the strict letter of those provisions or to meet that rather high standard of care expected of the ordinary motorist, provided he exercised reasonable care under the circumstances, as he did.
We find Dryden free of contributory negligence.
*1248 The judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.