304 So.2d 818 (1974)
Oliver S. ROBERTS, Plaintiff-Appellant,
v.
WINSTON CARRIERS, INC., et al., Defendants-Appellants.
No. 4748.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
Rehearing Denied January 9, 1975.
Writ Refused March 7, 1975.
*819 Brittain & Williams by Jack O. Brittain, Natchitoches, for defendants-appellants.
Whitehead & McCoy by C. R. Whitehead, Jr., Natchitoches, for plaintiff-appellee-appellant.
Robert J. Jones, La. Dept. of Highways, Baton Rouge, for defendant-appellee-appellant.
Blanchard, Walker, O'Quin & Roberts by Wilton H. Williams, Shreveport, for defendant-appellee.
Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
HOOD, Judge.
This suit was instituted by Oliver S. Roberts to recover damages for personal injuries which he sustained when his automobile collided with a mobile home being towed by a truck. The defendants are Robin L. Thibodeaux, driver of the tow truck; Winston Carriers, Inc., the contract hauler of the mobile home; Continental Insurance Company, insurer of Winston Carriers; Bertrand E. Thibodeaux, driver of an escort vehicle; and State of Louisiana, through the Department of Highways.
A reconventional demand was filed by Winston Carriers, Sherwood Homes, Inc., and Continental Insurance Company against plaintiff Roberts and his liability insurer, Travelers Indemnity Company. A third party demand was filed by the Department of Highways, seeking indemnity or contribution from Robin Thibodeaux, Bertrand Thibodeaux, Winston Carriers and Cenla Escorts.
*820 Plaintiff Roberts died on July 30, 1973, of causes not related to the accident, and Mrs. Ola Sparks Roberts, administratrix of his succession, was substituted as plaintiff.
The case was tried on September 13, 1973, and following that trial judgment was rendered by the trial court in favor of plaintiff, against Robin Thibodeaux and Winston Carriers, in solido, for $19,865.25. The demands of plaintiff against the Louisiana Department of Highways were rejected. All reconventional demands and all third party demands also were rejected. Defendants, Robin Thibodeaux, Winston Carriers, Sherwood Homes and Continental Insurance Company, appealed. Plaintiff also appealed, but limited her appeal to that part of the judgment which rejected her demands against the Department of Highways.
The principal questions presented are: (1) Was Robin Thibodeaux, driver of the tow truck, negligent? (2) Was the Department of Highways negligent in maintaining a hazardous highway at the place where the accident occurred? (3) Was the decedent Roberts negligent, barring recovery by plaintiff in this action?
The accident occurred at about 8:30 A. M. on March 8, 1972, on Louisiana Highway 6, at a point about two-tenths of a mile west of the corporate limits of the city of Natchitoches. Robin Thibodeaux was driving a truck west on Highway 6 at that time. The truck was towing a large mobile home. When this truck-mobile home combination reached a point just outside the west corporate limits of Natchitoches, it met an automobile owned and being driven east on that highway by the late Oliver S. Roberts. Roberts turned his automobile to his right just before he reached the tow truck, his purpose being to drive his car on the south shoulder of the road to allow the wide mobile home to pass safely. When the right front wheel of the Roberts' vehicle struck the "curb" on the south edge of the travelled part of the highway, the car suddenly turned to its left and ran into the side of the mobile home being towed by Robin Thibodeaux. As a result of that accident, Roberts sustained the injuries which form the basis for this suit.
Winston Carriers was engaged in the business of towing mobile homes from the plant of Sherwood Homes, Inc., in Natchitoches, to various points in and outside the State of Louisiana. Robin Thibodeaux owned the truck he was driving at the time of the accident, but he had leased it to Winston Carriers and he was employed by the latter to drive the truck in towing these mobile homes. His assignment on March 8, 1972, was to tow a mobile home from the Sherwood Homes lot in Natchitoches to San Antonio, Texas. At least four such mobile homes were scheduled to be towed from the Natchitoches plant to San Antonio on that date.
Robin Thibodeaux arrived at the Sherwood Homes lot about 7:00 A.M. on March 8, 1972. He drove his truck out of the lot at about 8:30 that morning, towing a mobile home 14 feet wide and 72 feet long, to begin his trip to San Antonio. Two trucks, each towing a mobile home, left the lot a few minutes before Robin Thibodeaux departed from it. Robin planned to make the trip as a part of a convoy composed of three units. In the lead, as they left the lot in Natchitoches and at the time of the accident, was an escort vehicle being driven by Robin Thibodeaux's father, Bertrand Thibodeaux. The Robin Thibodeaux truck and trailer combination then followed the escort vehicle, and behind the Robin Thibodeaux unit was a truck being driven by Travis Everett, which also was towing a mobile home.
The escort vehicle being driven by Bertrand Thibodeaux was a pickup truck equipped with a revolving amber warning light over the cab, two amber flashing lights over the cab, one on each side of the revolving amber warning light, and headlights. All of these lights were on at the time of and immediately before the accident.
*821 There also was a large sign on the front of the escort vehicle reading "Wide Load." The sign was five feet wide, it was painted yellow, and the black letters on it were nine inches high. The escort vehicle also was equipped with four red flags, one at each corner of the vehicle, and the driver carried another red flag in his left hand which he used to wave to motorists as he met them on the highway motioning for them to move to their right to allow the wide load to pass.
The tow truck being driven by Robin Thibodeaux was equipped with four-way flasher lights on the tops of the fenders, and these lights flashed on and off constantly as the truck was being driven. The headlights of the truck were burning, and there was a large sign on the front of the truck which read "Wide Load." Red flags were attached to all four corners of the 14 foot wide mobile home which was being towed.
The tow truck being driven by Travis Everett, which was towing a mobile home behind Robin Thibodeaux, was equipped with lights, a sign and flags, as was the unit just ahead of it, but the mobile home being towed by Everett was only 12 feet wide.
After this caravan left the mobile home lot, it proceeded to travel in a westerly direction on Louisiana Highway 6, which runs generally east and west. The collision occurred shortly after the vehicles left the lot in Natchitoches, the site of the accident being just outside the corporate limits of that city, and only three or four miles from the Sherwood Homes plant.
The highway at the place where the accident occurred was a two-lane, concrete highway, the traveled portion of which had a clear width of 18 feet. Each lane thus was nine feet wide. On both sides of the 18-foot concrete slab there were concrete mountable or roll over type curbs, each such curb being 12 inches wide. The highway, including the curbs, thus was 20 feet wide. Each curb formed a lip on the edge of the highway, the inside of the curb being level with the traveled part of the road, and the remainder of the curb slanting upward until the outside edge of it reached a level three inches higher than the traveled surface of that thoroughfare.
At the time the accident occurred Robin Thibodeaux was driving his truck east on the extreme north or right side of the traveled portion of the highway. The mobile home was so wide, however, that it covered the entire north or west-bound lane of traffic, and it also extended approximately four feet over the center line, covering a part of the south or east-bound lane of traffic. As the convoy met vehicles along the highway it was necessary for those vehicles to drive partially on the south shoulder of the highway in order to allow the mobile home to pass.
There were several signs and drains located on the north shoulder of the road which made it impossible for the Robin Thibodeaux truck to be driven on that shoulder. There were no such structures on the south shoulder of the highway, and that shoulder was wide enough to permit motor vehicles to be driven partially or entirely on that shoulder.
The caravan of vehicles, of which the Robin Thibodeaux unit formed a part, was traveling uphill on Highway 6 when the accident occurred. It previously had met some cars on that highway, and all of them had pulled off the road and had stopped on the shoulder to permit the wide loads to pass. Immediately before the collision occurred, three east-bound cars had driven onto the south shoulder of the road and had stopped in order to enable the towed mobile homes to pass. These cars were parked, about one car length apart, east of but near the crest of the hill. They were parked in that position when Mr. Roberts drove over the crest of the hill behind them. The evidence shows that Roberts remained in his lane of traffic and passed all three of these parked vehicles, and he passed the escort vehicle, before he attempted *822 to turn to his right in order to get his vehicle on the south shoulder of the highway.
Roberts was an 80 year old retired minister. He had been hospitalized for surgery shortly before the accident, and he had resumed driving his car only two or three weeks before the collision occurred. The automobile he was driving was a 1968 model Pontiac sedan, equipped with power steering. He lived about two miles from the scene of the accident, and he was thoroughly familiar with the highway in that area. He knew that roll over type curbs were on both sides of the traveled part of the highway, that there were sign posts and drains on the north shoulder which prevented the Thibodeaux truck from driving onto that shoulder, and that there was nothing on the south side of the highway to prevent him or any other motorist from driving onto the south shoulder.
Roberts' testimony was preserved in a discovery deposition taken shortly after the accident occurred. He testified that he did not see any of the vehicles which were parked on the south shoulder of the highway as he met the convoy, but that he did see the escort vehicle with a flashing light in front of the mobile home, and he estimated that the escort vehicle was approximately one hundred yards ahead of the mobile home being towed by Robin Thibodeaux. His recollection was that there were some other vehicles traveling west between the escort vehicle and the Robin Thibodeaux truck. He testified that he reduced his speed to 20 or 25 miles per hour, that he met and passed the escort vehicle, and that he attempted to turn to his right to get on the shoulder of the road when he reached a point about 30 or 40 feet from the mobile home which he later struck.
Mr. Roberts stated that his purpose in turning to the right was to drive onto the shoulder and stop, but that when the right front wheel of his automobile struck the curb it "knocked" or "bounced" him back, causing his car to turn to the left and run into the left side of the mobile home. He explained that he didn't attempt to drive on the shoulder before he reached a point within 30 or 40 feet of the trailer because "I wasn't that near to it," that "I began to realize that I had to do something," and that "I saw that I was into it, and then decided to try to take the curb and get on the shoulder."
Winston Carriers had obtained a special permit from the Louisiana Department of Public Safety authorizing it to tow this particular mobile home on Louisiana highways on March 8, 1972. The permit was issued pursuant to LSA-R.S. 32:388, subd. F, and it specified that the trailer was 14 feet wide, that the truck was to be driven by R. Thibodeaux, and that the route was to be over Louisiana Highway 6. The statute authorizes the Director of Highways to impose conditions upon the issuance of these permits, and pursuant to that authorization the department promulgated regulations which included a provision that:
"4. Movement shall not be made during inclement weather (rain, fog, etc.). When the movement is in progress and inclement weather occurs, it shall be the responsibility of the escort driver to have the oversize load removed from the traveled portion of the highway to a safe location off the shoulder."
It was not raining when Thibodeaux left the lot in Natchitoches, but it began to rain after he left and before he reached the point where the accident occurred. He and Winston Carriers contend that he intended to remove his truck and trailer (90 feet long, including the truck and its tow) from the traveled portion of the highway when he reached the crest of the hill he was ascending, and that that was the first opportunity he would have had to get off the highway after he encountered the rain. Plaintiff contends that the unit could have been moved off the traveled portion of the highway at other places after the rain began and before the accident occurred.
*823 The evidence is conflicting as to where the convoy was when it started to rain, and whether the mobile home could have been removed from the highway before the collision occurred. The trial judge concluded that the convoy encountered rain after it had traveled one-third the distance from the mobile home plant to the scene of the accident, and that there were at least four places where Robin Thibodeaux could have removed the mobile home from the highway after the rain began and before he reached the point where the vehicles collided. He held that Robin Thibodeaux was negligent in having failed to remove the truck-mobile home combination from the highway before the accident occurred, that his negligence in that respect was a proximate cause of the accident, and that he and Winston Carriers thus are liable, in solido, for damages to plaintiff.
The trial judge also held that Mr. Roberts was free from contributory negligence. In so holding, the court said:
"The flashing lights, red flags and flashing signals may have been sufficient to warn the average driver of the danger of an oversized vehicle but the very fact that Winston Carriers, Inc., chose to drive a 14 foot wide vehicle in direct violation of the law relating to driving oversized vehicles in the rain places an extremely high burden on the defendants which the court feels they have failed to sustain."
We have concluded that the trial judge erred in holding that Roberts was free from contributory negligence. The facts, as found by the trial court, convince us that Roberts was negligent, and that his negligence was a proximate cause of the accident, barring plaintiff from recovering. Since we have found that Roberts, or the representative of his estate, is barred from recovering because of contributory negligence on the part of the decedent, it is unnecessary for us to determine whether the defendants also were negligent.
Mr. Roberts makes it clear in his testimony that he saw the escort vehicle with its flashing lights approaching him after he came over the top of the hill, and that he had adequate time thereafter within which to get his automobile on the shoulder of the road, or partially on the shoulder, and out of the way of the mobile home. He knew that the mobile home extended over the center line into his lane of traffic, and that there was not room for him to pass it if he stayed in his lane of traffic. He stated that he "didn't see over four feet or better to pass him on," and that he intended to drive his car on the shoulder and "to stop." That, of course, is what the three motorists immediately ahead of him had done, and what any other prudent driver would have done.
The three cars which previously had parked on the south shoulder of the highway to allow the mobile home to pass obviously did not prevent Roberts from getting off the traveled part of the highway in time to avoid a collision. Roberts stated that he did not see any cars at all on the shoulder before he met the caravan. His only explanation as to why he did not attempt to get out of the way sooner was that he didn't feel that he "was that near to it" until he reached a point 30 or 40 feet from the approaching mobile home.
The trial judge found that the sole proximate cause of the accident was the negligence of Robin Thibodeaux and Winston Carriers in towing a wide load on the highway in the rain. He indicated in his reasons for judgment, as we understand them, that he might have found Roberts guilty of contributory negligence if it had not been raining, but that since Winston Carriers chose to tow an oversized load in the rain a much higher burden of proof rested on defendants to prove contributory negligence, and he felt that they had failed to sustain that burden.
We make no determination here as to whether Robin Thibodeaux and Winston Carriers were negligent. We find, *824 however, that the rain did not cause or contribute to the accident in any way, and we do not believe that the fact that it was raining altered or changed the burden of proof which rested on defendants to prove contributory negligence on the part of Roberts. The evidence shows that visibility was good despite the rain, and that Roberts saw the approaching escort vehicle and the mobile home being towed by Robin Thibodeaux in ample time to take the precautions which he knew had to be taken. There is no suggestion anywhere in the record that the rain interfered with Roberts' vision, or that it prevented him from driving onto the shoulder of the highway, or that it caused his car to turn suddenly to his left when his right front wheel struck the roll over curb. There is no contention that the highway was slippery or that the rain in any way caused the Roberts' car to collide with the mobile home. In our opinion, the rain did not relieve Roberts from his duty to exercise reasonable care. If the rain did present an additional hazard, then Roberts was under a duty to exercise greater care, since the evidence shows that he had seen the wide load ahead in ample time to allow him to get off the road.
Plaintiff argues that the "roll over" curb on the highway created a hazard to vehicles attempting to pull off the road, and that the design of that curb caused the Roberts' vehicle to veer to its left when the driver attempted to drive over it. The trial judge obviously found that there was nothing hazardous about the roll over curb, since he held that the Department of Highways was not negligent in maintaining a highway with curbs of that type. The evidence shows that this highway was built in 1934 or 1935 according to plans which were approved by the United States Bureau of Public Roads and in accordance with nationally accepted standards at that time. The roll over curb was designed specifically to make it easier for motorists to drive over the curb onto the shoulder of the road, and that type curb is still included in the design standards of the Louisiana Department of Highways and the Bureau of Public Roads. The curb at the site of this accident had only a three inch lift, and the testimony of expert engineers at the trial convinces us that it was a "very minimal" curb, and that if it had any less lift it wouldn't be a curb at all.
Plaintiff points out that the highway was designed to handle an average traffic volume of about 300 vehicles per day, but that by 1972 the traffic count had increased to more than 7,000 vehicles per day. She argues that the highway was too narrow to accommodate that high volume of traffic safely, and that the Highway Department was negligent in maintaining such a narrow thoroughfare in that area. We agree that under modern standards the highway should be wider to accommodate the volume of traffic which uses it. We do not feel, however, that the Department of Highways is liable in damages for having failed to widen the highway or to close it to all traffic before this accident occurred simply because it did not meet modern standards as to width. We agree with the apparent holding of the trial court that the roll over type curbs used on that highway were not hazardous.
Plaintiff, relying on Simon v. Ford Motor Company, 282 So.2d 126 (La.1973), argues that since the collision occurred in plaintiff's lane of traffic, there is a presumption that defendants were negligent, and that the defendant driver is required to exculpate himself of any fault, however slight, contributing to the accident. She contends that defendants have not overcome that presumption of fault. Plaintiff also points out that the permit which was issued to Winston Carriers authorizing this particular trailer to be towed provided that the wide load should not "infringe upon the opposite bound lane of a two lane pavement." She takes the position that this requirement was a safety measure designed to protect life and property on the highway, and that a violation of that provision *825 is negligence per se, citing Dixie Drive-it-Yourself v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). Defendants call our attention to other provisions of the permit which they contend authorized the wide load to infringe on the opposite bound lane in this instance. We have considered these arguments which tend to show that defendants were negligent. We pointed out earlier, however, that it is unnecessary for us to determine whether defendants were negligent, since we have concluded that plaintiff is barred from recovery by contributory negligence on the part of the decedent Roberts.
Our conclusion is that the trial judge erred in holding that the decedent Roberts was free from contributory negligence. The judgment appealed from must be reversed, therefore, insofar as it condemns defendants Robin Thibodeaux and Winston Carriers to pay damages to plaintiff.
For the reasons assigned, that part of the judgment appealed from which condemns defendants, Robin L. Thibodeaux and Winston Carriers, Inc., to pay damages to plaintiff is reversed, and judgment is hereby rendered in favor of said defendants, rejecting plaintiff's demands against them and dismissing this suit at plaintiff's costs. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed in part and reversed in part.
DOMENGEAUX, J., dissents and assigns written reasons.
DOMENGEAUX, Judge (dissenting).
The trial judge made specific findings of fact, accepted the testimony of certain witnesses, and concluded, rather strongly, that the sole proximate cause of the accident was the gross and excessive negligence of the defendants, Robin L. Thibodeaux and Winston Carriers, Inc. He held the Highway Department free of fault and likewise held the decedent Oliver S. Roberts to be free of contributory negligence. There is ample evidence in the record to support his findings and certainly there is no manifest error. I would affirm the judgment appealed and therefore respectfully dissent.