424 So.2d 522 (1982)
Margaret Smith DEVALL
v.
Ernest J. MORGAN, et al.
Deborah K. RYBCZYK as Trustee of/and Government Employees Insurance Company
v.
Ernest J. MORGAN, et al.
Deborah KRELLER, Widow of Rhys S. Rybczyk
v.
Ernest J. MORGAN.
Nos. 5-277 to 5-279.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Rehearing Denied January 17, 1983.
Writs Denied March 4, 1983.
*523 Elsie B. Halford, Metairie, for Margaret Smith Devall, plaintiff-appellee.
Wells & Breaux, John H. Wells, New Orleans, for Deborah K. Rybczyk as trustee of/and Government Employees Ins. Co., plaintiffs-appellees.
Gordon Hackman, Boutee, for Ernest J. Morgan, defendant-appellant.
Philip K. Jones, Marshall W. Wroten, Robert J. Jones, Doran & Kivett, William J. Doran, Jr., Baton Rouge, for State of La., Dept. of Transp. and Development, defendant-appellant.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CHEHARDY, Judge.
These cases were consolidated for trial in the district court and for argument here. They arise from a head-on collision between two uninsured automobiles on U.S. Highway 61 (Airline Highway) in that section known as the Bonne Carre Spillway Bridge. Casper A. Rigamer, driver of one of the automobiles, and his guest passenger Rhys Rybczyk were killed and Ernest L. Morgan, the owner-driver of the other automobile, was injured.
Suit No. 5-277 of our docket was instituted by Rigamer's divorced wife Margaret Devall, as administratrix of the estate of the three minor Rigamer children, for loss of love and affection, pain and suffering and loss of their father's support. The principal defendants in the suit, and the only ones with which we are concerned in this court, are Ernest Morgan and the State of Louisiana, Department of Transportation and Development (Office of Highways),[1] hereinafter referred to as the Highway Department.
Morgan answered and reconvened for special and general damages, and the Highway Department answered asserting the defense of negligence and/or contributory negligence on the part of Rigamer and filed a third party demand against Morgan.
Suit No. 5-278 of our docket was filed by Mrs. Deborah Rybczyk as trustee of/and Government Employees Insurance Company against Morgan, the Highway Department (and other defendants not pertinent here) for $50,000 which had been paid to Mrs. Rybczyk under the uninsured motorists provision of her own policy with that insurer following the death of her husband.
Morgan reconvened in this suit for his injuries and the Highway Department filed a third party demand against Morgan, alternatively seeking solidary liability along with Morgan in the event that department was found liable.
Suit No. 5-279 of our docket was filed by Mrs. Rybczyk against Morgan for the wrongful death of her husband. She named no other defendant. Morgan filed the same answer and reconventional demand as he had in the other suits.
Following trial on the merits judgment was rendered against only the Highway Department in the various suits as follows:
*524 In Suit No. 5-277 there was judgment in favor of Margaret Devall as administratrix of the estate of the three minor Rigamer children in the sum of $50,000 each for general damages and additional special damages for each child for loss of support. (The latter awards were based upon a previous judgment for support rendered in the parents' divorce action, figured until each child was 18 years of age. The children were all in their teens at the time of Rigamer's death.)
Suit No. 5-278 relative to the $50,000 uninsured motorist claim of Mrs. Rybczyk, as trustee, and Government Employees Insurance Company was dismissed, as was Suit No. 5-279, Mrs. Rybczyk's personal suit against Morgan.
The trial court dismissed all claims against Morgan, finding he was free of negligence and had in no way contributed to the accident. The court ruled that the sole proximate cause of the accident was the failure of the Highway Department to inspect and maintain the bridge, which was found to be too narrow for the volume of traffic.
Morgan filed a motion for a new trial in each suit and Mrs. Rybczyk, as trustee, and Government Employees Insurance Company filed a motion for a new trial in their suit. Morgan's motion for a new trial was based upon his claim that, because of procedural difficulties, his claims had not been joined against the state and that the court had orally ordered severance of his claims as plaintiff.
At a hearing on the motions, the judge rendered an amended judgment whereby Morgan's claim for a bifurcated judgment was denied. He was found to be contributorily negligent to a sufficient degree so as to dismiss his cause of action, but not to such a degree as to be liable with the Highway Department.
The judgment was also amended in Suit No. 5-278, awarding Mrs. Rybczyk as trustee and Government Employees Insurance Company $50,000 against the Highway Department. As explained by the trial court in its reasons for judgment this claim had been denied in the original judgment because the court had overlooked the fact that the Highway Department was a named defendant in this suit and consequently entitled to a judgment. This inadvertence is explained inasmuch as the department was not a defendant in Mrs. Rybczyk's individual suit and had been named a defendant in her suit as trustee for/and the insurer by means of a supplemental and amended petition.
As in the original judgment, the Highway Department was found to be the sole proximate cause of the accident. The awards for the Rigamer children were maintained and the motions for a new trial were denied.
Morgan suspensively appealed from the original and amended judgments in Suits Nos. 5-277 and 5-278, as did the Highway Department. No appeal was taken in those suits by any other parties, apparently due to the insolvency of the individual defendant, and Mrs. Rybczyk did not appeal in Suit No. 5-279.

FACTS
The accident occurred about 5:50 a.m. on Saturday, May 28, 1977. Morgan, the sole survivor, was travelling from his home in Reserve to his place of employment in Avondale Shipyards. Rigamer and Ryczyk, the decedents, were travelling from their home in New Orleans to go fishing on the other side of the spillway. The weather was patchy fog. The vehicles were travelling on Highway 61 approaching in opposite directions. The speed limit on the highway and the narrower spillway bridge was 55 miles per hour.
The bridge itself is a four-lane undivided roadway about one mile long with concrete guard rails on either side about 3 feet from the highway. There is an 18-inch-wide walkway on each side which forms a curb 16 inches high adjacent to the outside lane in both directions. Thus the total surface available to traffic is 40 feet. There is a double yellow line painted down the center of the 40-foot width. Located between the lines are reflective buttons 3/4 inches high by *525 4 inches square, 40 feet apart. Each direction of travel is divided by a dashed white painted line. These markings total 20 inches in width. Thus the effective width of travel in each lane averages 9 feet 7 inches.
On one side of the center line there are two lanes reserved for traffic travelling eastward (i.e. toward New Orleans), and on the opposite side of the center line two lanes are reserved for traffic travelling westward toward Baton Rouge.
Morgan's version of the accident is that he was travelling 45 to 50 miles per hour as he approached the bridge from the highway. He slowed down for the traffic bump prior to entering the bridge and then resumed his speed. It was foggy but he was able to see the other automobile, a football field or a field-and-a-half away, cross over on an angle from the westbound lane into his lane. He was travelling in the eastbound lane closest to the bridge railing. Morgan moved into the opposite lane, blinked his lights, blew his horn, sped up and tried to pass, but the other vehicle swerved back, so he hit his brakes and closed his eyes because he knew it was going to be a head-on collision. He stated the accident took place in his eastbound lane.
Plaintiffs rely on the testimony of the investigating police officer, State Trooper Lynn P. Bertaut, Jr., Captain Wallace Friloux, Jr., of the St. Charles Parish Sheriff's Office, and Herman Parish, an accident reconstruction expert, to establish their view that the accident occurred in the westbound lane of traffic.
Captain Friloux arrived at the scene about 10 minutes after the accident. He took 17 photographs at the scene which show in detail the damaged vehicles and their final resting places. The most severe impact was to the right front of both vehicles.
Bertaut testified the initial impact was in the middle of the left westbound lane. He arrived at this conclusion by observing fresh gouge marks in the concrete which were located in the left westbound lane 4 feet 10 inches north of the center stripe and 13 feet 6 inches south of the north curb.
Parish testified that immediately before the impact Rigamer was driving his automobile in a westerly direction in the left westbound lane of the spillway bridge. He further indicated the Morgan vehicle, travelling eastward, was straddling the center line prior to impact with at least one-half of the car in the wrong lane. He based these conclusions on the gouge marks in the left westbound lane, scuff (skid) marks of the Morgan car, and the photographic evidence showing the physical damage to each car, the debris, and the post-impact movement of the vehicles. He further explained in detail how he was able to establish by the law of physics (i.e., motion) that before the collision the Morgan vehicle was travelling approximately 10 to 15 miles per hour faster than the Rigamer car because the Rigamer car was pushed backward on impact and the Morgan car continued its forward motion.

NEGLIGENCE
Relative to Morgan's negligence, or absence thereof, the evening before the accident he went to a few bars, had a couple of highballs, arrived home about midnight, got something to eat, slept two hours and then got up and went to work. As he described the accident, it happened in his lane of traffic. However, this is not supported by the physical evidence. As we have previously discussed, the physical evidence overwhelmingly supports the fact that the impact occurred in the lane that rightfully belonged to Rigamer. This being the case, it was incumbent on Morgan to exculpate himself from the inference of negligence. See Simon v. Ford Motor Company, 282 So.2d 126 (La.1973). Morgan failed to carry that burden. His negligence was clearly a proximate cause of the accident.
The claim of negligence on the part of the highway department is principally based upon the fact the spillway bridge, built in 1935, is obsolete under today's standards. *526 At the time it was built it conformed to all national standards and even excelled in some areas. However, in 1950 the American Association of State Highways and Transportation officials (AASHO) prescribed minimum lane widths of 12 feet on the primary highway systems. The spillway lane width of 9 feet 7 inches does not, of course, meet the new standards.
Plaintiffs' experts made various suggestions as to ways the bridge should have been made safer, concluding that a parallel span is the ideal solution; but less expensive measures, including a 36-inch base carrier along the center line, "bumps" in the center line area at 2- or 3-foot intervals, fog sensor devices or fog warning signals, improved lighting, and reduced speed limits, would be appropriate.
The highway department experts did not feel a center barrier was feasible because it would make the lanes even narrower and possibly cause more accidents, nor did they believe fog signs or sensors would have prevented the instant accident. They confirmed that the bridge did not meet today's standards, but concluded that any deficiency in the structure was not the cause of this accident. We agree with this conclusion. U.S. 61 is a primary highway of the state and thousands of vehicles traverse it safely between New Orleans and Baton Rouge. Had it not been for the fact that one or both of the vehicles were travelling in the wrong lane of traffic, this unfortunate accident would not have occurred.

THE LAW
We are guided by the Supreme Court case of Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). The court recognized the Highway Department has a duty to maintain a reasonably safe highway for the protection of those people who could foreseeably be placed in danger by an unreasonably dangerous condition. That duty encompasses an obligation to provide and maintain an efficient and continuous system of all state highways and bridges. It must make safe any defect of the system of which it has or should have knowledge. Jones v. Louisiana Department of Highways, 338 So.2d 338 (La.App. 3d Cir.1976); Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App. 3d Cir.1975). The department is liable for damages when it is shown that the hazardous condition that caused the injuries was patently or obviously dangerous to the reasonably careful driver and the department, with actual or constructive knowledge, failed to correct the defect within a reasonable time. Shively v. Pickens, 346 So.2d 1314 (La.App. 3d Cir.1977); Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3d Cir.1974).
However, the failure of the state to update its highways to the current standards does not establish the existence of a hazardous defect. Usry v. Louisiana Department of Highways, 402 So.2d 240 (La. App. 4th Cir.1981); Roberts v. Winston Carriers, Inc., 304 So.2d 818 (La.App. 3d Cir. 1974). To impose a burden upon the state of having to update its thousands of miles of highways within the latest guidelines would be an impossible one to fulfill. Roberts v. Winston Carriers, Inc., Ibid.
It is well settled that the highway department is not an insurer of the safety of all motorists on the roads, but has the obligation to maintain the roads and highways in a reasonably safe condition for a reasonable prudent driver. State Farm Mutual Automobile Insurance Co. v. Slaydon, 376 So.2d 97 (La.1979); Hodges v. State, Through Dept. of Highways, 370 So.2d 1274 (La.App. 3d Cir.1979); Wilson v. State, Through Dept. of Highways, 364 So.2d 1313 (La.App. 3d Cir.1978).
The action of drivers in crossing the center line has previously been discussed. When a driver is involved in an accident in the opposite lane he is presumed negligent and is required to exculpate himself from fault. Simon v. Ford Motor Company, supra; Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957).
*527 In applying the law as stated above, we find no negligence on the part of the state,[2] and hold that the sole proximate cause of the accident was the negligence of defendant Morgan. Since no appeal was taken on the failure of the trial court to cast Morgan in judgment, we cannot do so here.
For the reasons assigned, the judgments appealed from are reversed and it is now ordered that there be judgment in favor of the State of Louisiana, Department of Transportation and Development (Office of Highways), dismissing plaintiff's claim in Suit No. 5-277.
REVERSED AND RENDERED.
NOTES
[1] Named in the suit as State of Louisiana, Department of Highways.
[2] We reject the application of C.C. art. 2317, as this case clearly involves third party fault.