509 So.2d 128 (1987)
William ROBINSON
v.
ESTATE OF Donald HAYNES, et al.
Barbara WASHINGTON
v.
LA. DEPT. OF TRANSPORTATION & DEVELOPMENT, et al.
Kim ROBINSON, et al.
v.
William L. MILLER, et al.
Nos. 86-CA-0418 to 86-CA-0420.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*129 Byard Edwards, Jr., Ponchatoula, Phillip T. Hager, Hobart O. Pardue, Jr., Springfield, Johnny McGary, Ponchatoula, for plaintiffs-appellees Kim Robinson, et al., William Robinson, and Barbara Washington, et al.
Jerry L. Finley, Baton Rouge, for defendant-appellant Dept. of Transp. and Development.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
These are three consolidated tort actions arising out of one automobile accident. The trial court held in favor of plaintiffs and against the defendant, the State of Louisiana, through the Department of Transportation and Development (the State). The State has appealed.
The accident that resulted in these three suits occurred on U.S. Highway 61 on the Bonne Carre Spillway bridge on August 14, 1979. Testimony conflicted concerning the sequence of events immediately prior to the accident. However, the following facts are generally not in dispute: Donald Haynes was operating a 1978 Pontiac Trans Am in a westbound direction on U.S. Highway 61 with William Robinson, Joe Eddy Washington and Bernard Washington as passengers. Also traveling in a westbound direction was a pickup truck operated by Nolan Spring, accompanied by Kenneth Hodges and Philip Domiano. All of the occupants of the Trans Am and the pickup truck were employees of Raguso Brothers, Inc. and had been working in Norco, Louisiana, which is located on the east (New Orleans) side of the Bonne Carre Spillway bridge. Although their normal quitting time was 3:30 p.m., they had been released early (approximately 2:50 p.m.) on this day due to heavy rains.
The record shows that both vehicles were traveling west (toward Baton Rouge) on U.S. Highway 61 on their way home from work. It was raining extremely hard at the time. The Trans Am passed the pickup truck upon entering onto or just prior to entering onto the bridge at an estimated speed of 50-55 m.p.h. The speed limit on the bridge is 45 m.p.h. Mr. Spring testified that he was traveling about 40-45 m.p.h. when the Trans Am passed him but that he then slowed down to 30 or 35 m.p.h. because the rain was causing problems with his visibility.
*130 An accurate description of the Bonne Carre Spillway bridge is found in Devall v. Morgan, 424 So.2d 522, 524 (La.App. 5th Cir.1982), writ denied, 427 So.2d 1214 (La. 1983), which provides:
The bridge itself is a four-lane undivided roadway about one mile long with concrete guard rails on either side about 3 feet from the highway. There is an 18-inch-wide walkway on each side which forms a curb 16 inches high adjacent to the outside lane in both directions. Thus the total surface available to traffic is 40 feet. There is a double yellow line painted down the center of the 40-foot width. Located between the lines are reflective buttons ¾ inches high by 4 inches square, 40 feet apart. Each direction of travel is divided by a dashed white painted line. These markings total 20 inches in width. Thus the effective width of travel in each lane averages 9 feet 7 inches.
On one side of the center line there are two lanes reserved for traffic travelling eastward (i.e. toward New Orleans), and on the opposite side of the center line two lanes are reserved for traffic travelling westward toward Baton Rouge.
Also, the record shows that at the time of the accident there were various traffic signs existing on the approach to the bridge and along the bridge itself. A motorist traveling in a westerly direction on U.S. 61 (as was the Trans Am) would have first seen a "Narrow Bridge" sign and then a "Truck Passing Truck Prohibited" sign. Shortly thereafter was a "Trucks Use Right Lane" sign. Next, there was a "Speed Limit 45" sign followed by a sign reading "No Stopping on Bridge." Then there was another "Speed Limit 45" sign.
Approximately one-half mile onto the bridge, the Trans Am spun out of control and crossed the center line into the path of an eighteen wheel gravel truck. The gravel truck, driven by John Bellard, struck the Trans Am broadside in the rear quarter panel on the driver's side. The force from the impact virtually ripped the Trans Am in half, killing all of its occupants, except William Robinson. The gravel truck continued out of control for another 280 feet where it struck Mr. Spring's pickup truck and came to rest.
Mr. Spring testified that he was traveling in the outside (right) lane and that the Trans Am passed him on the inside (left) lane. He further testified that the gravel truck was traveling in the inside (left) eastbound lane in violation of the requirement for trucks to use the right lane. Mr. Spring also stated that neither vehicle had its lights on and that the Trans Am brake lights never illuminated.
Mr. Hodges testified that Mr. Spring was operating the pickup truck in the inside (left) lane and that the Trans Am passed them on the left in the center eastbound lane. He stated that the Trans Am was hit while attempting to reenter the westbound lanes. Mr. Hodges agreed with Mr. Springs that the gravel truck was traveling towards them in the inside (left) lane.
However, Mr. Bellard testified that he was operating the eighteen wheel gravel truck in the right lane in accordance with the traffic signs. He stated that he did not see the Trans Am until it was approximately 45-50 feet away and spinning directly toward him. He further testified that there was a lot of westbound traffic ahead of the Trans Am.
As a result of that accident a multitude of lawsuits were filed. Many of the actions were either settled out of court or dismissed, leaving as the only matters to be tried these three consolidated suits against the State of Louisiana, through the Department of Transportation and Development. The plaintiffs are: William Robinson, for his damages resulting from the accident; Kim Robinson, individually and as natural tutrix for her minor children, Tamaka Robinson and Myneskia Robinson for damages arising out of the death of Joe Eddy Washington, as his alleged wife and children; Barbara Washington, individually and as natural tutrix of the minors Derrick Taylor and Shannon Washington, for damages arising out of the death of Bernard Washington, as the alleged wife and children of Bernard Washington.
*131 This matter was tried on September 4 and 5, 1984, and was recessed. The trial was concluded on February 28, 1985. The trial court judge found the State to be negligent in its maintenance of the bridge and that this negligence was the sole cause of the accident. Accordingly, judgment was signed in favor of the plaintiffs in the following amounts:

William Robinson - $325,088.00 plus interest and
 $800.00 for expert witness fees.
Barbara Washington - $395,780.00 plus interest and
 $800.00 for expert witness fees.
Kim Robinson - $300,000.00 plus interest and
 $800.00 for expert witness fees.

The State has appealed asserting nineteen assignments of error. However, we find it necessary to discuss only the first two such assignments which provide:
1. The trial court erred in holding the State negligent in failing to properly maintain the Bonne Carre Spillway Bridge by not providing adequate warning signs or devices.
2. The trial court erred in holding the State negligent in not providing a barrier between the different traffic lanes.

NEGLIGENCE
The State contends that the trial court erred in finding that the cause of the accident was the unsafe or dangerous condition of the bridge. We agree.
The duty of the state, through the Department of Transportation & Development, to maintain state highways is summarized in Bush v. State, Through Department of Highways, 395 So.2d 916, 920-21 (La.App. 2nd Cir.), writs denied, 399 So.2d 609 (La.1981), as follows:
... The law is settled that the Department of Highways is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways.... Generally, it is the duty of the Highway Department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence... (citations omitted) United States Fidelity and Guaranty Co. v. State, Department of Highways, 339 So.2d 780 (La.1976).
... However, reasonable care requires, and the Department does owe, a duty to the traveling public to erect barricades, signs and adequate markings to warn against extremely dangerous, trap-like hazards, unusual obstructions, perilous conditions or defects in the road.... Whether the warning is required, reasonable, or adequate is determined by the place where the danger exists, the nature of the road and the general situation and circumstances surrounding it. All of these factors, together with the kind and speed of vehicles, are to be taken into consideration to determine whether the Department has discharged its duty.... (citations omitted) Vervik v. State, Department of Highways, 302 So.2d 895 (La.1974).
There is no fixed rule for determining what is a dangerous defect in a public way; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question: Was the public way maintained in a reasonably safe condition for persons exercising ordinary care and prudence? ... (citations omitted) Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975).
Plaintiffs sought to establish that the bridge was unreasonably dangerous and set forth three corrective measures that the state failed to utilize in order to maintain the bridge in a reasonably safe condition. Mr. Duaine Evans, plaintiffs' expert in traffic engineering and accident reconstruction, testified that the state could have done the following: (1) reduce the speed limit; (2) install a center barrier; and/or (3) increase the coefficient of friction on the surface of the bridge.
In its written reasons for judgment the trial court stated:
IT IS THE OPINION of this Court that the State of Louisiana, through the *132 Department of Transportation and Development, failed to properly maintain the Bonne Carre Spillway Bridge. They did not provide adequate warning signs or devices. There was no meaningful effort made to provide an adequate barrier between the different traffic lanes. The surface of the bridge was shown to have been worn down over the many years of use. It was further shown that when wet (as in this case) the bridge was extremely dangerous and very susceptible to slipping or sliding. When there was heavy rain, the water would not drain away fast enough to prevent accumulation, and thus create an extremely dangerous situation that could cause `hydroplaning' and the resulting total loss of control. The evidence shows that the State had notice and actual knowledge of the defects and dangerous condition of the bridge. The State has maintained statistics and accident reports on this bridge since early 1960's. These records clearly show an extremely high number of head-on collisions and cross-over accidents. Again, the State took inadequate or no action to prevent or reduce these types of accidents. There was expert testimony that this bridge is one of the several `most dangerous' sections of highway in the State.

ADEQUATE WARNING SIGNS
We cannot agree with the finding of the trial court that adequate warning signs or devices were not provided. The record shows that prior to this accident the speed limit was lowered from 55 to 45 m.p.h. and marked accordingly. Also, signs were placed on the bridge warning that the lanes are narrow and prohibiting trucks to use the right lane. Mr. Boyd Gautreaux and Dr. Olin Dart, experts in the field of traffic engineering, testified that the signing of the bridge was adequate.
Furthermore, a reasonably prudent driver need not be warned of conditions which are patent and obvious. Darbonne v. Allstate Ins. Co., 357 So.2d 1269, 1273 (La.App. 3rd Cir.), writ refused, 359 So.2d 622 (La.1978). It is clear from the record that at the time of the accident it was raining extremely hard. Yet Mr. Haynes, instead of slowing down, drove in excess of the speed limit. A driver who drives his vehicle at a speed greater than is reasonable and prudent under the conditions and the potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather is negligent. La.R.S. 32:64; Smith v. Phoenix Insurance Company of Hartford, 208 So.2d 361, 362, 363 (La.App. 1st Cir.), writ denied, 210 So.2d 507 (La.1968). We find that the signing of the bridge was adequate and, in any event, the normal hazards of driving on a wet surface in a hard rain, i.e., a slight decrease in traction and diminished visibility, were patent and obvious and need not have been warned against.

BARRIER
Secondly, plaintiffs argued, and the trial court agreed, that a concrete barrier should have been placed down the middle of the bridge to separate the eastbound and westbound lanes of traffic. Again we must disagree.
In order to utilize such a barrier, Mr. Evans admitted that the bridge would have to be reduced to only two lanes, one in each direction, due to its limited width, i.e., 40 feet. Although this barrier would admittedly decrease the number of head-on collisions, the state's experts testified that its use would not be feasible. Among the many reasons in support of this were the fact that many other type accidents would be caused by the two lanes suddenly merging into one. Also, vehicles colliding with the barrier itself would be a newly created hazard, especially at its point of origin where there is no median in which to extend the barrier. Also, Mr. Evans felt that the speed limit would have to be reduced to 35 m.p.h., which state experts explained would cause excessive traffic buildup with the then-existing traffic volume and a resulting increase in rear-end collisions.
We find, as did the court in Devall v. Morgan, supra at 526, the evidence incontrovertable *133 that a barrier would not have been feasible nor reasonable for the Bonne Carre Spillway bridge. Accordingly, as the State did not owe any duty to provide such a barrier, it was not negligent in its failure to do so.

ROAD SURFACE
Finally, plaintiffs assert, and the trial court found, that the bridge was unreasonably dangerous when wet because it did not drain properly and its surface was excessively worn. Again, we disagree and find the trial court to be clearly wrong.
State Trooper Larry Williams testified that the water does drain off the bridge and that there were no defects in the roadway. He explained that on his accident report he had marked the road surface as a contributing factor of the accident "simply because it was wet." Mr. Spring testified that it was raining "tremendously hard" and that the amount of water on the road was that which would exist anytime there is a heavy downpour. At trial Mr. Bellard testified that there was a little bit of puddling, but in his earlier deposition he had testified that there were "no puddles, not at that time." In fact, plaintiff's witness, Mr. Evans, testified that he did not believe that the Trans Am had hydroplaned.
Concerning the surface of the road, Mr. Evans testified that the road surface on the bridge was badly worn and needed resurfacing. However, on cross-examination he admitted that he based his opinion on a visual observation and that he had made no tests to determine if its coefficient of friction failed to meet any state or federal standards.
Plaintiffs introduced various traffic accident reports in an attempt to show that the state had notice of the high number of accidents occurring on the bridge. In Lincecum v. Missouri Pacific Railroad Co., 452 So.2d 1182,1188 (La.App. 1st Cir.), writs denied, 458 So.2d 476 (La.1984), we stated:
Testimony concerning prior accidents is admissible for the limited purpose of showing that the defendant had notice of defects or physical conditions which are dangerous. Cassanova v. Paramount-Richards Theatres, Inc., et al., 204 La.813, 16 So.2d 444 (La.1944); Keen v. Pel State Oil Company, Inc., 395 So.2d 866 (La.App. 2nd Cir.1981). The use of prior accidents or injuries are only admissible where the prior accidents or injuries are closely related in circumstances to the injury or hazard at issue. Miller v. Employers Mutual Liability Insurance Company of Wisconsin, 349 So.2d 1353 (La.App. 2nd Cir 1977). (Emphasis ours).
We find no showing by the plaintiff that the prior accidents in the reports were so closely related in circumstances to the hazard at issue, i.e., the defective condition of the bridge, as to be admissible for the purpose of showing notice. Rather the defense showed that a majority of the accidents shared little or no resemblance to the one at hand. The accident reports covered the years 1968 through 1979 inclusive. Therefore, the speed limit was higher, 55 m.p.h., during those years, except for a period in 1979, than it was at the time of this accident. Also, Mr. Evans testified that these reports reflected a high number of cross-over accidents, 45 out of a total of 140 accidents. Yet, it was pointed out that some of these accidents had occurred prior to the vehicles crossing the centerline, but were marked as cross-over accidents if the vehicles crossed the centerline after the collision. Furthermore, Mr. Evans admitted that in his analysis of the accident reports, he did not take into consideration whether the accident occurred during the day or night, whether the road was wet or dry, the condition of the driver, or the particular type of vehicles involved.
In his reasons for judgment, the trial judge stated "these records clearly show an extremely high number of head-on accidents and cross-over accidents." To the contrary, the records clearly show that in comparison to similar roadways, the accident rate for the Bonne Carre Spillway bridge was less than either the district or state averages for the years 1977,1978 and 1979. However, we find that the evidence was improperly admitted because it did not meet the Lincecum criteria. Therefore, we must review the facts without reference *134 to such evidence and render judgment on the merits. Miller, supra at 1358. After doing so, we find that plaintiffs have failed in their burden to prove by a preponderance of the evidence that the road surface was defective, i.e., unreasonably dangerous.
Admittedly, at the time of the accident, the Bonne Carre Spillway bridge did not meet current standards. In Devall v. Morgan, supra at 526, the court provides:
However, the failure of the state to update its highways to the current standards does not establish the existence of a hazardous defect. Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.1981); Roberts v. Winston Carriers, Inc., 304 So.2d 818 (La. App. 3d Cir.1974). To impose a burden upon the state of having to update its thousands of miles of highways within the latest guidelines would be an impossible one to fulfill. Roberts v. Winston Carriers, Inc., Ibid.

CONCLUSION
Under either theory of recovery, strict liability or negligence, plaintiff must prove that there was a defect in the bridge. Even viewing the evidence in a light most favorable to plaintiffs, we cannot find that it is more probable than not that the Bonne Carre Spillway bridge was defective and that such a defect was the proximate cause of this accident. Thus, we find no liability on the part of the State, through the Department of Transportation and Development.
We find the proximate cause of the accident was the concurrent negligence of Donald Haynes and John Bellard. Mr. Bellard was negligent in operating his truck in the left lane in violation of the traffic signs requiring trucks to use the right lane only. His negligence contributed substantially to the occurrence of the accident.
Also, Mr. Haynes is presumed negligent as he was in the opposite lane of travel at the time of the accident. Simon v. Ford Motor Co., 282 So.2d 126 (La.1973). We find that the evidence failed to overcome this presumption. Under the weather conditions existing at that time, Mr. Haynes was negligent in operating his vehicle at a speed of 50-55 m.p.h., which was in excess of the posted speed limit. Mr. Haynes' speed was neither prudent nor reasonable under the conditions.
For the reasons assigned, the judgments of the trial court are reversed. All costs of this appeal are to be born by plaintiffs-appellees.
REVERSED.