COVINGTON, Chief Judge.
The defendant, the Department of Transportation and Development (DOTD), ap *447 peals the judgment apportioning fifty percent of the fault for a single-vehicle accident to it and awarding plaintiff fifty percent of $53,317.02, with interest, in damages. Plaintiff has answered the appeal, requesting an increase in damages and asking that DOTD’s apportionment of fault be increased to 100 percent. Because we find that the trial court misconstrued the legal duty of DOTD in this instance and incorrectly assessed plaintiff’s fault, we reverse.
The accident occurred on October 23, 1982, at sometime between 3:30 and 4:30 a.m. The plaintiff testified that he had met with two friends at a Baton Rouge lounge, as he did weekly, where he spent several hours talking and drank three glasses of wine. After the lounge closed at 2:30 a.m., the three friends talked for a short time in the lounge’s parking lot, and plaintiff then drove to an all-night restaurant on Airline Highway, where he drank two cups of coffee. He then left and began his drive home alone to Plaquemine. The accident took place along La. Highway 1 near Addis, when, plaintiff testified he left the roadway in order to avoid a vehicle, travelling in the same direction, which passed him, made a quick cut in front of him, causing Jones to “throw on my brakes.” Plaintiff said this caused him to get off a little bit to the right and lose control. His vehicle traversed the shoulder and a grassy slope beyond it, went into a drainage ditch and hit a concrete culvert or embankment located about 27 feet from the edge of the roadway.
Plaintiff alleged that the state was strictly liable for his resulting injuries because it had failed to meet the standards of the American Association of State Highway Officials (AASHTO) in (1) not maintaining 30 feet of clearance from the highway, and (2) allowing a slope of 2 to 1 rather than 4 to 1 on the foreslope, the grassy area between the shoulder and the drainage ditch. In support of his contentions, he offered the testimony of Dr. Olin K. Dart, the only expert to testify at trial.
Dr. Dart, who qualified as an expert in traffic engineering, highway design, and highway safety, testified that La. Highway 1 was four-laned between 1955 and 1960. At that time, the plans and specifications called for the foreslope to have a four-to-one slope, or four feet of horizontal area for every one foot of drop. However, at the time of trial and presumably at the time of the accident in question, there was an eight-foot wide paved shoulder, followed by only five feet of grassy area with a four-to-one slope. The remaining area between the roadway and drainage ditch had a two-to-one slope.
Regarding the 30-foot clearance standard, Dr. Dart testified that AASHTO first proposed this measure in 1967 for certain classes of major highways, which would include Highway 1. The culvert headwall with which plaintiff collided was designed in 1955, according to Dr. Dart, and it provided an obstacle within the 30-foot clearance advocated by AASHTO in 1967 and adopted as a highway design standard by this state. The culvert itself ran beneath an access road to Highway 1 which would have required proper sloping or elimination in order to achieve a 30-foot clearance.
Testimony of both the sheriff’s deputy who arrived first on the scene of the accident and the state trooper who actually “worked” the accident and filed the accident report indicated that they detected alcohol on the plaintiff’s breath. Trooper Robert E. Hilburn testified that he had a blood sample drawn from the plaintiff at Earl K. Long Hospital after the accident which indicated a .09 percent blood alcohol level. The results of this analysis were never submitted into evidence, even though the trial judge stated the report was properly certified; however, there was no objection to Trooper Hilburn’s testimony in this regard.
Based on Dr. Dart’s testimony, and his designation of the highway as arterial and therefore major, the trial judge apparently found that the foreslope and lack of 30-foot clearance constituted defects for which DOTD was strictly liable, stating “the State is going to be charged with liability for failure to meet [the] criteria for this type of highway.” However, he also found “fifty percent liability of the driver *448 in drinking, any amount of wine getting on a highway at three o’clock ...”
We disagree with the conclusion that there were defects for which DOTD should be held strictly liable here. We find the recent case of Manasco v. Poplus, 530 So.2d 548 (1988), determinative in this instance.
In Manasco, the defendant driver of a double axle dump truck attempted to avoid a left-turning vehicle in his lane of travel. The truck had begun sliding on the wet pavement after the driver applied his brakes, so the driver veered right onto the shoulder and struck a fire .hydrant in the ditch next to the shoulder. The rear of the truck slid left into the opposite lane of travel and struck another vehicle. The plaintiff sued DOTD as well as the truck driver, alleging that the roadway and shoulder were substandard under AASHTO and state standards and therefore defective and a cause of the accident. Driver familiarity with the road and visibility were not issues. The court held that an admittedly substandard, gravel shoulder and narrow roadway did not present an unreasonable risk of harm and reversed the trial and appellate courts’ findings of liability on the part of DOTD, stating: “we find the sole cause of the accident was Poplus’ [the defendant-driver’s] failure to maintain proper control of his vehicle.” The court’s discussion on DOTD’s responsibility for the state’s highways was as follows:
Many Louisiana roads are narrow by today’s standards and have a gravel shoulder. It would be physically and financially impossible to bring all of the state’s roads up to modern standards. Therefore, the failure of DOTD to reconstruct the state’s highways to meet modern standards does not establish the existence of a hazardous defect. [Citing Myers v. State Farm Mut. Auto. Ins. Co., 493 So. 1170 (La.1986) ].
In the case at bar, the plaintiff not only had a paved shoulder eight feet in width on which he could have steered to avoid any vehicle in his lane, but also five additional feet of grassy area beyond the shoulder in which the slope was the recommended four-to-one standard, which would allow driver recovery and easy re-access to the roadway. As in Manasco, there was no contention here that a rut, pothole, or abrupt dropoff between roadway and shoulder caused plaintiff to lose control of his vehicle. Although Manasco involved a two-lane roadway rather than a four-lane highway as this case does, we do not find the distinction of relevance here, where the characteristics of arterial versus collector roads played no role in causing the accident. Under these circumstances, we cannot find that the shoulder and foreslope conditions, while not up to modern standards, or the presence of a culvert within twenty-seven feet of the roadway instead of thirty-one feet, presented an unreasonable risk of harm to drivers. Rather, driver fault in failing to maintain control of his vehicle within the twenty-four feet of roadway, eight feet of paved shoulder, and five feet of grassy four-to-one foreslope caused the accident. It would be sheer speculation to conclude that thirty feet of horizontal clearance from the roadway would have prevented this accident. We need not reach the factors of driver fatigue or intoxication as possible causes of the loss of control of the vehicle in order to find DOTD free from fault.
The trial court was in error in holding DOTD to be 50 percent liable. Therefore, we reverse that judgment and render judgment in favor of DOTD, dismissing plaintiff’s suit at his costs.
REVERSED AND RENDERED.