ALFORD, Judge.
The defendant, Louisiana Department of Transportation and Development (DOTD), appeals the trial court’s judgment finding DOTD seventy-five percent (75%) at fault in a vehicular accident between the plaintiff, Earl E. Jones, and another defendant, Thomas W. Stillwell, which occurred on Louisiana Highway 16 (LA. 16) in Livingston Parish.
BACKGROUND
On April 17,1984, at approximately 11:40 a.m., Mr. Stillwell was operating a tractor-trailer rig loaded with wet sand southbound on LA. 16. It was his third trip along the same route that day. Mr. Jones was driving a tractor-trailer rig with an empty gravel trailer northbound on LA. 16. As they approached each other in a curve, both were close to the centerline. Mr. Still-well, upon noticing the oncoming vehicle, applied his brakes and jerked hard to his right. The trailer of the Stillwell vehicle began overturning and the vehicles collided when the overturning trailer swung over into the northbound lane. Mr. Jones, upon noting the trailer come into his lane of traffic, attempted unsuccessfully to pull onto the right shoulder to avoid the contact. The impact threw Mr. Jones through his windshield, and he suffered serious injuries.
On December 14, 1984, Mr. Jones and his wife filed suit against Carolina Casualty Company, United States Fidelity and Guaranty Company, Gaines Trucking Inc., Mears Sand Gravel Company, ABC Insurance Company, DOTD and Mr. Stillwell. Settlements were reached between the plaintiffs and most of the defendants, and all defendants were dismissed except for DOTD. The case was tried on July 8, 1986, and taken under advisement. On December 12, 1986, the judge issued written reasons holding DOTD negligent for its lack of proper maintenance of the roadway in the vicinity of the accident site and awarding plaintiffs $714,378.15 in damages, plus legal interest and court costs. On July 13, 1987, the judge issued supplemental written reasons assessing Mr. Stillwell with twenty-five percent (25%) negligence. The judgment was signed on September 1, 1987.
DOTD then perfected this suspensive appeal, contending the trial court erred (1) in finding DOTD negligent for lack of proper maintenance of the roadway when the potholes were on the shoulder and played no part in the accident and (2) in finding that the condition of the roadway was the legal cause of the accident. DOTD did not appeal the damage award. The plaintiffs did not appeal or answer the appeal.
After a thorough review of the record, we agree with DOTD and reverse in part.
DISCUSSION
It is well settled jurisprudentially that an appellate court will not disturb a trial court’s findings of fact in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A review of the record of the instant case convinces us that the trial court was clearly wrong in assessing liability to DOTD.
As explained in Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170, 1171-1172 (La.1986), under both strict liability and negligence articles (La.C.C. arts. 2317 and 2315):
liability hinges on whether the defendant has breached his duty to the plaintiff. While the basis for determining the existence of the duty is different in art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. DOTD’s duty to travelers is to keep the highways and their shoulders in a reasonably safe condition. Whether *1101 DOTD had breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition will depend upon the particular facts and circumstances of each case. [Citations omitted.]
The accident occurred in the northbound lane in the second part of an “S” type curve on a two-lane blacktop roadway divided by a solid double yellow no passing line. Each travel lane measured 10 feet in width. Additionally, there were hot patch strips adjacent to the main level lanes, located on the unimproved shoulder, which measured between one and one-half to three feet in width. Signs in place at the time of the accident facing southbound traffic included a 50 mph speed limit sign and a reverse curve sign.
On the day of the accident, the hot-patch area next to the southbound travel lane contained potholes approximately one and one-half inches in depth. The weather that day was dry.
Testimony revealed that LA. 16 has been part of the state maintained highway system since 1931. Over the years, the highway has been maintained by overlays on the existing roadway; no redesign has ever been undertaken. In 1980, the speed limit on the road was reduced from 55 mph to 50 mph as the result of a speed study. The curve at the accident site was established as 395 to 406 feet, and four accidents at the same location had been reported between January 1, 1980, and the date of the accident. Sometime after the accident, LA. 16 was designated a substandard roadway because of inadequate shoulder width (less than 5 feet wide).
In his reasons for judgment, the trial judge stated that “Mr. Stillwell positioned his rig so as to avoid the existing potholes and rough shoulder to his right, this adjustment placing his truck on or near the center line.” While not referring specifically to the speed limit on LA. 16, the trial judge also noted that Mr. Stillwell’s corrective measures in swerving to the right reduced the critical and rollover speeds and held that the accident was caused by DOTD’s failure to properly maintain the area.
It is clear from the record that Mr. Still-well’s vehicle never went onto the shoulder at any time before or during the accident and never struck any potholes. Mr. Still-well, while describing the road as a “little narrow” and “rough,” admitted that he did not have any trouble keeping his truck between the centerline and the potholes which were located off the travel portion of the roadway. He admitted that he braked and jerked his vehicle hard to the right when he realized he was on or near the center line and he saw the plaintiff’s oncoming vehicle. He also stated he had not had any trouble controlling his vehicle or negotiating the turn until he attempted to avoid the accident by jerking on his steering wheel.
Trooper Kenneth Williams, the state police officer who investigated the accident testified that he examined the roadway surface and found nothing wrong with it. Neither the plaintiffs’ expert, Raymond Charles Burkhart, Jr.,' nor the defendant’s expert, Dr. Olin Dart, found any defects on the travel portion of the roadway. However, Mr. Burkhart classified the highway as substandard and opined that the width of the travel portion, the lack of adequate shoulders and the presence of potholes on the hot patch area adjacent to the roadway travel lanes were factors which caused the accident. He also found no driver error on Mr. Stillwell’s part. Dr. Dart testified that the potholes located off the travel surface had no effect on the accident. He stated that even if the potholes had been rolled over by the Stillwell vehicle, the vehicle would have had no trouble negotiating them because they were apparently only about one and one-half inches deep.
As to whether or not the travel lanes were substandard because of width, Maurice’ Oliver Jourdon, District Maintenance Engineer for DOTD, testified that DOTD now classifies a roadway as substandard when each travel lane is nine feet or less. Each travel lane on LA. 16 is 10 feet wide. The record shows that a tractor-trailer rig generally is about eight feet wide and that *1102 it tracks slightly wider than eight feet in a curve. Thus, it is apparent that, even in a curve, a tractor-trailer rig will fit within the confines of a 10-foot lane.
In regard to the speed limit, Mr. Burk-hart opined that, based on the width of the highway, the degree of curve, the critical speed, the weight of the fully loaded sand truck and the accident history, the 50 mph speed limit was too high for the curve. He estimated the critical speed for the curve where this accident happened to be between 60 and 65 mph. He defined critical speed as the speed at which a vehicle under perfect conditions would begin to slide sideways toward the outside of the curve. Plaintiffs other expert, Mr. O.P. Griffith, calculated the critical speed at between bl-eb mph and stated that the 50 mph speed limit did not allow enough tolerance. However, when asked what kind of leeway should be allowed, he stated “I don’t really want to put numbers on that.” Mr. Griffith also calculated that a tractor-trailer loaded with sand would start to roll over in the curve where the accident happened at a speed in excess of 65 mph.
Dr. Dart’s figures on critical speed and rollover speed closely approximated those of plaintiff’s experts. He also testified that the advance warning reverse curve sign had an advisory speed of 40 mph on it and that the dating on the reverse side of the sign indicated that the sign had been in place at the time of the accident. In examining the site’s accident history, Dr. Dart stated that the turn had a very low accident experience since the vehicle count on the road was between 2,103 and 2,972 per day for the time period between January 1, 1980, and the accident date, or less than one accident per million vehicles passing through the area.
Trooper Williams, who investigated this accident and regularly patroled the area, testified that he had clocked gravel trucks in this particular turn for two months prior to the accident because of complaints of speeding and that trucks going 50 mph had no problem negotiating this turn.
Mr. Stillwell testified that he was driving between 45 and 50 mph when the accident occurred. He explained his action in the curve and what happened, stating:
I was in the curve and everybody knows that when you pull to the right and if its top heavy its going to lay over to the left and I was in the curve and I seen I was going to hit so I just jerked, reflexed, jerked, and when you jerk something and its top heavy its going to lay over and that is what happened.
The recent case of Manasco v. Poplus, 530 So.2d 548 (La.1988), is applicable to this case. The court therein held that an admittedly substandard gravel shoulder and a narrow roadway did not present an unreasonable risk of harm and that DOTD had not breached its duty to keep the roadway in a reasonably safe condition. The court found that the defendant driver’s failure to maintain proper control of his vehicle was the cause of the accident. As to DOTD’s responsibility for the state’s highway, the court stated in Manasco, 530 So.2d at 550:
Many Louisiana roads are narrow by today’s standards and have a gravel shoulder. It would be physically and financially impossible to bring all of the state’s roads up to modern standards. Therefore, the failure of DOTD to reconstruct the state’s highways to meet modern standards does not establish the existence of a hazardous defect.
Also see Jones v. State Department of Transportation and Development, 536 So.2d 446 (La.App. 1st Cir.1988), writ denied, 537 So.2d 212 (La.1989), wherein the first circuit followed Manasco and found that the sole cause of the accident was driver fault.
In the instant case, the surface of the roadway itself was in good condition. The curve was adequately signed and there was an advisory speed limit of 40 mph, with a legal speed limit of 50 mph as established by a speed study in 1980. Moreover, the accident rate in the area was very low. Accordingly, we find that the stretch of road in question did not present an unreasonable risk of harm and that DOTD did not breach its duty to keep this portion of LA. 16 in a reasonably safe condition.
*1103 Moreover, plaintiffs have failed to show that the speed limit or the potholes on the hot-patch area located on the unimproved shoulder played any part in causing the accident. Mr. Stillwell admitted that he did not have any trouble staying on the roadway while driving at a speed between 45 and 50 mph and that his problems did not begin until he realized that he was on or near the centerline and applied his brakes and jerked his vehicle sharply to the right. Under these circumstances, we find the sole cause of the accident to be Mr. Still-well’s failure to maintain proper control of his vehicle. The trial court was clearly wrong in finding otherwise.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court insofar as it apportioned 75% of the fault to DOTD, and find in favor of the Louisiana Department of Transportation and Development. All court costs are to be borne by the plaintiffs.
REVERSED IN PART AND RENDERED.